**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

**LAW OFFICE OF MOSELEY C. COLLINS, III**
MOSELEY C. COLLINS, III, State Bar #92460
1700 Carnegie Way
El Dorado Hills, CA 95762
Telephone: (916) 444-4444

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of JOHNATHAN ROSE, deceased, by and through his parents THEODORE MILTON ROSE and KAREN ROSE, as successors in interest; THEODORE MILTON ROSE, Individually; and KAREN ROSE, individually. <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SACRAMENTO; Sacramento County Sheriff SCOTT JONES; Sacramento County Sheriff's Department Deputy DAVID McENTIRE (Badge # 1356); and DOES 1 through 10, inclusive, <br><br> Defendants. <br> _____/ | NO. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Theodore Milton Rose, Karen Rose and the Estate of Johnathan Rose complain and allege as follows:

Complaint for Violation of Civil Rights and State Law

1

## I. JURISDICTION

1. This Complaint seeks damages pursuant to Title 42 U.S.C. sections 1983 and 1988 for the violation of Johnathan Rose's, Theodore Rose's and Karen Rose's civil rights and for violations of California State Law arising from the wrongful death of Johnathan Rose, who was shot and killed by Sacramento County Sheriff's Deputy David McEntire. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. section 1367.

## II. VENUE

2. Plaintiffs' claims, alleged herein, arose in the County of Sacramento, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. PARTIES

3. The Estate of Johnathan Rose is being represented by Theodore Milton Rose and Karen Rose, decedent's father and mother as successors in interest.

4. Plaintiffs Theodore Milton Rose (hereinafter referred to as "Ted Rose") is the father of decedent Johnathan Rose. Ted Rose was a pastor. He is a United States citizen and a resident of the County of Sacramento.

5. Karen Rose is the mother of decedent Johnathan Rose. She is a United States citizen and a resident of the County of Sacramento.

6. Defendant County of Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California. Defendant County of Sacramento operates and manages the Sacramento County Sheriff's Department (hereinafter "Sheriff's Department").

7. Defendant Scott Jones (hereinafter referred to as "Sheriff Jones") was at all times mentioned in this Complaint, the Sheriff of County of Sacramento and acting in the

course and scope of that position. Defendant Sheriff Jones is being sued in his individual and official capacities. Sheriff Jones exerts ultimate supervisory authority over all of his subordinates and promulgates or approves the promulgation of the policies and the practices of the Sacramento County Sheriff's Department.

8.  As Sheriff, Defendant Scott Jones was responsible for the training and supervision of all Sacramento County Sheriff's Department employees and/or agents, including Defendants Does 6-10. Defendant Scott Jones was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts alleged herein occurred. Defendant Scott Jones is being sued in his individual and official capacities.

9.  Defendant Deputy David McEntire (Badge #1356) (hereinafter referred to as "Deputy McEntire") was at all times mentioned in this Complaint, a deputy sheriff employed by the County of Sacramento and acting in the course and scope of his employment. Defendant Deputy McEntire is being sued in his individual and official capacities.

10. The true names and identities of Defendants Does 1 to 5 are presently unknown to Plaintiffs. Plaintiffs allege on information and belief that each of Defendants Does 1 to 5 was employed by Sacramento County Sheriff's Department at the time of the conduct alleged herein and was responsible for the promulgation of the customs and practices which caused the acts alleged herein and which resulted in plaintiffs' injuries. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendant Does 1 through 5 have been ascertained.

11. The true names and identities of defendant Does 6 through 10 are presently unknown to plaintiffs. Plaintiffs allege that each defendant Does 6 through 10 was a supervisor employed by the Sacramento County Sheriff's Department at the time of the conduct alleged and was individually responsible for the training, supervision and discipline of Deputy McEntire. Plaintiffs assert that the failure to properly train, supervise and discipline officers, including Deputy McEntire, was a cause in fact of the injuries

Complaint for Violation of Civil Rights and State Law

3

alleged herein. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendant Does 6 through 10 have been ascertained.

12. Defendants Scott Jones and David McEntire, and Does 1 to 10, to the extent they engaged in any acts or omissions alleged herein, engaged in such acts or omissions under color of state law.

13. Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, Defendants, and each of them, were the agents, employees, servants, joint ventures, partners and/or co-conspirators of the other Defendants named in this Complaint, and that at all times each of the Defendants was acting within the course and scope of said relationship with Defendants.

## IV. INTRODUCTION

14. On January 17, 2012, Johnathan Rose, a 25 year-old schizophrenic, was shot to death in his family's home by Deputy McEntire while in his father's arms and in the presence of his mother and brother. Johnathan was unarmed and had been sleeping prior to Deputy McEntire initiating a needless physical encounter which resulted in Johnathan's death. The Sheriff's Department had been called over an hour earlier to preemptively deal with a behavioral issue involving Johnathan which had thoroughly resolved prior to Deputy McEntire's arrival. After Deputy McEntire had shot Johnathan, Ted Rose plaintively asked the officer why he had shot his son, to which Deputy McEntire replied, "I don't know. I don't know. I don't know."

## V. EXHAUSTION OF PRE-LAWSUIT PROCEDURES

15. Plaintiffs filed governmental tort claims with the County of Sacramento on or about June 1, 2012, as a pre-requisite to the state law claims alleged herein. As more than 45 days have elapsed since the filing of the claims those claims are deemed rejected by operation of law.

///
///
///

Complaint for Violation of Civil Rights and State Law

4

## VI.  FACTUAL ALLEGATIONS

16. At the time of the incident, January 17, 2012, Johnathan Rose was twenty-four (24) years old living on San Martin Street in North Highlands, California.  He had been diagnosed as suffering from paranoid schizophrenia and obsessive compulsive disorders and frequently exhibited behavior consistent with these conditions.

17. Johnathan was a white male who stood approximately 6 feet tall and weighed approximately 215 pounds.

18. Johnathan had been prescribed and was taking psychotropic medications. He regularly received psychiatric care.  He lived with his family who helped take care of him.

19. The family had recently moved back to Sacramento County from Placer County.  This move resulted in a change in Johnathan's psychiatric care provider.  He had met with his new psychiatrist for the first time the afternoon of January 17, 2012. Karen Rose had driven him to the appointment. The visit was stressful for Johnathan.

20. After Johnathan returned home from the appointment, he was clearly upset. He was refusing to eat, which was problematic because he needed to take food with his medication.  He was acting out by throwing food.

21. Based upon his knowledge of his son's reaction to stress, Ted Rose thought the best way to defuse any potential situation was to ask for the assistance of law enforcement.  The Rose's had preemptively avoided serious problems in the past, while they lived in Placer County, by, on several occasions, calling for the assistance of police officers.  One of those instances resulted in a 14-day psychiatric hospitalization, but on other more recent occasions, the officers' presence simply diffused the situations.

22. Ted Rose called 911 and explained the situation.  Although the call was placed on a 911 line, Ted Rose did not over-dramatize the situation or create a false impression that his son was on a rampage.  He did, however, request an officer's assistance. Ted Rose's health had declined in the last couple of years prior to the incident, including

Complaint for Violation of Civil Rights and State Law

5

having a heart attack in late 2010, and he was, understandably, cautious when Johnathan was upset.

23. After Ted Rose placed the call, Johnathan calmed down, took his medication with food and fell asleep without incident.

24. More than an hour after Ted Rose placed the 911 call, Deputy McEntire responded to the Rose home.  Unbeknownst to Ted Rose, the Sheriff's Department dispatch practice was to downgrade a call regarding someone who was potentially "5150" when the Sheriff's Department received only a single call for service.  Had Ted Rose placed multiple calls, the protocol would have required a minimum of two officers responding.

25. When Deputy McEntire arrived, Ted Rose opened the door with the expectation that he would be able to explain both why he had called for assistance and why the situation was no longer volatile or requiring any officer intervention.

26. McEntire did not allow Ted Rose to explain what happened or why he had called for assistance.  Instead, McEntire simply barked, "Where is he?" and, without asking for permission, brushed past Ted Rose and entered the Rose's home.

27. Johnathan was sleeping on a mattress in the living room because he had given up his own bedroom to his sister who was staying at the house temporarily.

28. During the entire interaction between Deputy McEntire and Johnathan Rose, his mother, Karen, was in the bathroom and Johnathan's brother, Theodore, Jr., was in his bedroom.  Although they could hear much of what was happening, they were not able to see most of what transpired.

29. Deputy McEntire went directly to Johnathan, who was sleeping on the mattress and yelled, "Get up" twice.

30. Johnathan, although startled, stood up as directed.  Johnathan faced the wall and put his hands behind his back, apparently expecting to be handcuffed.

31. Deputy McEntire then ordered Johnathan to get on the ground.

32. One of the manifestations of Johnathan's obsessive compulsive disorder (OCD) and paranoid schizophrenia was an extreme phobia regarding germs.

Complaint for Violation of Civil Rights and State Law

6

33. Johnathan started to get on the floor with one knee. He then stood back up and said, "I can't. Just arrest me," and once again put his hands behind his back, waiting to be handcuffed. Psychologically, he was unable to be prone on the dirty floor - a manifestation of Jonathan's OCD behavior was a fear of coming into contact with germs on the floor. This was not a sufficient response for Deputy McEntire. Deputy McEntire, without warning or reflection, bear-hug tackled Johnathan into the wall with sufficient force so as to cause Johnathan to bust a hole through the wall. McEntire then hit Johnathan on the head with his metal flashlight, again without warning. Johnathan, with McEntire on top of him, fell onto his mattress on the floor. McEntire, on top of Johnathan, started to pummel him with punches. At that point, Johnathan attempted to defend himself by trying to block McEntire's blows, and he also threw some punches in response to McEntire's blows in a desperate attempt to try to stop the attack.

34. Ted Rose, shocked by the bizarre turn of events, grabbed his son in an attempt to end the physical confrontation. He urged his son to "stop" and warned his son, "He's going to hurt you."

35. Then, without warning, Deputy McEntire fired three shots in rapid succession into Johnathan while Ted Rose held his son.

36. Johnathan went limp after the shots but was breathing.

37. Johnathan never used or attempted to use any weapon or weapon of opportunity during the struggle with Deputy McEntire.

38. Johnathan never grabbed or attempted to grab Deputy McEntire's firearm or any of his other law enforcement weapons.

39. Ted Rose asked Deputy McEntire to administer some kind of aid to Johnathan, lying on his bed profusely bleeding into his mattress, in the time after the shooting and before the ambulance arrived.

40. Deputy McEntire did not administer any aid to Johnathan or permit Ted Rose, Karen Rose or Ted Jr. to administer any aid to Johnathan.

41.     Ted Rose repeatedly and plaintively asked Deputy McEntire why he'd shot his son. Deputy McEntire responded, "I don't know. I don't know. I don't know."

42.     Johnathan was breathing when he left in an ambulance.

43.     Theodore, Jr. was detained in the back of a police car. Johnathan's sister, Tiffany, arrived on the scene, and when she told the officer Johnathan was her brother and that she wanted to see him, she was told she couldn't and was threatened with arrest for "resisting." None of the Roses were permitted to accompany Johnathan to the hospital, nor were they allowed to speak with or visit him at the hospital before he died.

44.     Johnathan died later in the evening of January 17, 2012.

45.     Law enforcement agencies in California, including the Sacramento Sheriff's Department, have been aware of the increasing number of mental health related calls as there has been a reduction in the funding of mental health services. Because of that, the Sheriff's Department is aware of the need for specialized training and protocols when dealing with potentially mentally ill individuals.

46.     Deputy McEntire's actions indicate a total lack of awareness in regard to handling a mentally ill individual. Any reasonably trained officer would not have escalated this situation or used deadly force.

47.     Plaintiffs are informed and believe that a substantial number of the law enforcement related shootings within Sacramento County have involved mentally ill individuals.

48.     Deputy McEntire has a history of excessive force that the Sheriff's Department is actually aware of involving incidents occurring both before and after this shooting.

49.     The Sheriff's Department does not track individual officers' uses of force for the purpose of identifying potential problem officers. The importance and value of tracking this information has been widely recognized and accepted in law enforcement for at least twenty (20) years and, in particular, as a result of the Christopher Commission report in the aftermath of the Rodney King case.

50. Plaintiffs believe and allege that the death of their son was the result of deficient training and supervision and unconstitutional policies, practices and customs at the Sheriff's Department regarding the use of force and regarding interactions with mentally ill or impaired individuals.

51. Plaintiffs believe and allege that the Sheriff's Department has a history of unnecessary and fatal encounters with mentally ill individuals.  Further, this is not the only time that a family member has called for assistance for a mentally ill relative who was not acting out violently and who was shot and killed in his own home.

52. As a result of the Defendants' conduct alleged herein, including the practices, polices and inadequate training in responding appropriately to citizens with diagnosed mental illnesses, Johnathan was killed.

53. As a result of the Defendants' conduct alleged herein, Plaintiffs Ted Rose and Karen Rose have lost the lifelong love of their son and suffered emotional distress and mental anguish.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Excessive Force/Unreasonable Seizure**
**(Survival Action – 42 U.S.C. Section 1983)**
*(Against Defendant McEntire)*

54. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, as though fully set forth herein.

55. The acts and/or omissions of the Defendant alleged herein, including but not limited to his use of excessive and deadly force upon decedent caused decedent's untimely death.  Said conduct violated decedent's right to be free from excessive force and unreasonable seizure as defined by the Fourth and Fourteenth Amendments to the United States Constitution.

56. As a direct and proximate result of said acts and/or omissions by Defendants, decedent suffered unreasonable interference with his personal liberty, pain and suffering and death. Said conduct also resulted in Plaintiffs' injuries as alleged herein.

57. The aforementioned acts and/or omissions of the individually named Defendant was malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

## SECOND CLAIM FOR RELIEF

**Substantive Due Process – Loss of Family Relationships**
**42 U.S.C. Section 1983**
*(Against all Defendants)*

58. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 57, as though fully set forth herein.

59. The acts and/or omissions of the Defendants alleged herein, including but not limited to the excessive and deadly force upon decedent, caused the untimely and wrongful death of the decedent and deprived Plaintiffs of their liberty interest in their family relationships in violation of their substantive due process rights as defined by the Fourteenth Amendment to the United States Constitution.

60. Said acts and/or omissions were the direct and proximate cause of injury to Plaintiffs, as alleged herein.

61. As a direct and proximate result of the acts and/or omissions of Defendants, and each of them, Plaintiffs have been compelled to retain counsel to represent them in this matter and Plaintiffs are entitled to an award of attorneys' fees in this matter pursuant to 42 U.S.C. Section 1988.

62. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of

Plaintiffs' rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

### THIRD CLAIM FOR RELIEF

**Unconstitutional Practices/De Facto Policy**
**(Survival Action - 42 U.S.C. Section 1983)**
*(Against Defendants County of Sacramento, Jones, and Does 1 through 5)*

63. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62, as though fully set forth herein.

64. The aforementioned acts and/or omissions of the Defendants in being deliberatively indifferent to decedent's mental condition and violating decedent's civil rights were the direct and proximate result of the customs, practices or de facto policies of Defendants County of Sacramento, Jones, and Does 1 through 5 as alleged herein.

65. Such customs and/or practices and/or de facto policies include but are not limited to an ongoing pattern of reckless escalating of calls relating to non-violent 5150 individuals into deadly encounters.

66. The customs, practices and/or de facto policies of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent Johnathan Rose in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this incident.

67. As a direct and proximate result of the aforementioned customs, practices and/or de facto policies of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### FOURTH CLAIM FOR RELIEF
**Supervisory Liability**
**(Survival Action – 42 U.S.C. Section 1983)**
*(Against Defendants Jones and Does 6-10)*

68. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 67, as though fully set forth herein.

69. Defendants Jones and Does 6-10 tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of constitutional rights.

70. The customs, policies and/or practices of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent Johnathan, in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this incident.

71. As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### FIFTH CLAIM FOR RELIEF

**Wrongful Death**
**(Cal. Code of Civil Procedure section 377.60 et seq.)**
*(Against all Defendants)*

72. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 71, as though fully set forth herein.

73. The acts and/or omissions of the Defendants alleged herein and detailed below caused the wrongful death of Johnathan and were the direct and proximate cause of Plaintiffs' injuries entitling Plaintiffs to recover damages pursuant to Code of Civil Procedure sections 377.60 et seq.:

**a. Negligent Supervision, Training, Hiring and Retention (Cal. State Law)**
*(Against Defendants Jones and Does 6 through 10)*

74. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73, as though fully set forth herein.

Complaint for Violation of Civil Rights and State Law

12

75. Defendants Jones and Does 6 through 10 have a duty to hire, supervise, train, and retain employees and/or agents so that its employees and/or agents refrain from the conduct alleged herein but breached that duty causing the conduct alleged herein. This breach proximately caused damages and injuries as alleged herein and resulted in the wrongful death of Scott.

### b. Failure to Furnish/Summon Medical Care (Cal. Govt. Code § 845.6)
*(Against Defendant McEntire)*

76. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 75, as though fully set forth herein.

77. Defendant McEntire knew or had reason to know that Johnathan was in need of immediate medical care and the Defendant failed to take reasonable action to summon such medical care or provide that care resulting in decedent's death and a violation of California State Law and specifically California Government Code section 845.6. This conduct proximately caused damage and injuries to decedent and Plaintiffs. County of Sacramento is vicariously liable for the conduct of Defendant McEntire. The actions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiffs' rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

### c. Battery (Cal. State Law)
*(Against Defendants County of Sacramento and McEntire)*

78. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77, as though fully set forth herein.

79. Defendants conduct was wrongful, intentional, and unwelcome bodily contact constituting battery. As a direct and proximate result of said acts and/or omissions by Defendants, decedent Johnathan suffered unreasonable interference with his personal liberty, pain and suffering and death. Defendant County of Sacramento is vicariously liable for the conduct of Defendant McEntire.

## SIXTH CLAIM FOR RELIEF

**Unreasonable Search**
**(Violation of the Fourth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. Section 1983)**
*(Against Defendant McEntire)*

80. On behalf of the decedent Johnathan Rose, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79, as though fully set forth herein.

81. The aforementioned acts and/or omissions of the defendants as alleged herein, including but not limited to entering the plaintiffs' home without a warrant or exigency, constituted a violation of the Fourth Amendment of the United States Constitution.

82. As a direct and proximate result of the aforementioned acts, plaintiffs suffered damages as alleged herein.

83. The aforementioned acts and/or omissions of the individually named defendants were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights thereby entitling plaintiffs to an award of exemplary and punitive damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. That no other family has to experience what the Roses did as a result of calling law enforcement for help.

2. That Sheriff Jones and the Sacramento County Sheriff Department's training and policies regarding interactions with mentally ill individuals be deemed inadequate and constitutionally deficient as a matter of law and that proper training and policies be implemented;

3. For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

4. For punitive and exemplary damages against each Defendant in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct, as allowed by law;

5. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

6. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated:   July 3, 2013	LAW OFFICE OF STEWART KATZ

/s/ Stewart Katz
STEWART KATZ
Attorney for Plaintiffs

Dated: July 3, 2013	LAW OFFICE OF MOSELEY C. COLLINS, III

/s/ Moseley C. Collins, III
MOSELEY C. COLLINS, III
Attorney for Plaintiffs

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury.

Dated:  July 3, 2013	LAW OFFICE OF STEWART KATZ

/s/ Stewart Katz
Stewart Katz,
Attorney for Plaintiff

Dated: July 3, 2013	LAW OFFICE OF MOSELEY C. COLLINS, III

/s/ Moseley C. Collins, III
MOSELEY C. COLLINS, III
Attorney for Plaintiffs

Complaint for Violation of Civil Rights and State Law

15